SUPREME COURT OF ARIZONA
In Division

| | | |
|---|---|---|
| JILL KENNEDY, an individual and qualified elector, | ) ) ) | Arizona Supreme Court No. CV-12-0221-AP/EL |
| Plaintiff/Appellee, | ) ) | Coconino County Superior Court |
| v. | ) ) | No. CV2012-00386 |
| JOSEPH LODGE, an individual, Real Party in Interest, THE HONORABLE CARL TAYLOR, MATT RYAN, ELIZABETH ARCHULETA, LENA FOWLER AND MANDY METZGER, THE DULY ELECTED OR APPOINTED MEMBERS OF THE COCONINO COUNTY BOARD OF SUPERVISORS, WHO ARE NAMED SOLELY IN THEIR OFFICIAL CAPACITY; WENDY ESCOFFIER, CLERK OF THE BOARD OF SUPERVISORS, WHO IS NAMED SOLELY IN HER OFFICIAL CAPACITY; THE COCONINO COUNTY BOARD OF SUPERVISORS; THE HONORABLE CANDACE D. OWENS, THE DULY ELECTED COCONINO COUNTY RECORDER, WHO IS NAMED SOLELY IN HER OFFICIAL CAPACITY, AND THE HONORABLE PATTY HANSEN, THE DULY APPOINTED COCONINO COUNTY ELECTION ADMINISTRATOR, WHO IS NAMED SOLELY IN HER OFFICIAL CAPACITY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **O P I N I O N** |
| Defendants/Appellants. | ) ) | |

Appeal from the Superior Court in Coconino County
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

_____

WILLIAMS, ZINMAN, & PARHAM, P.C.                         Scottsdale
     By   Scott E. Williams
        Mark B. Zinman
        Melissa A. Parham
Attorneys for Jill Kennedy

COPPERSMITH, SCHERMER, & BROCKELMAN, PLC                   Phoenix
     By   Andrew S. Gordon
        Roopali Hardin Desai
Attorneys for Joseph Lodge

_____

**B E R C H**, Chief Justice

¶1      On June 27, 2012, we issued an order affirming the superior court's judgment that nominating petitions designating the office sought as "Superior Court," without specifying the office and division number, did not substantially comply with A.R.S. §§ 16-314 (Supp. 2011), -331, and -333 (2006).  This opinion explains our reasoning.

## I.  FACTS AND PROCEDURAL HISTORY

¶2      Joseph Lodge is a judge of Division Five of the Superior Court in Coconino County who seeks to run for election to a new term in that office.  Two Coconino County judgeships, Division Three and Division Five, are up for election this year.  The primary election is scheduled for August 28, 2012.

¶3      To qualify for the primary election ballot, Lodge needed to obtain 525 valid signatures on his nominating petitions.  *See* A.R.S. §§ 16-314, -322(A)(4) (Supp. 2011) (requiring certain percentage of qualified electors to sign nominating petitions for superior court judge).  He timely filed

- 2 -

99 nominating petitions containing a total of 1,110 signatures. Each petition states that Lodge is running for the office of "Superior Court." The petitions do not specify that he is running for the office of "Judge," nor do they specify that he seeks election to Division Five.

¶4 Jill Kennedy, a qualified elector, challenged Lodge's petitions, arguing that they do not substantially comply with A.R.S. §§ 16-314, -331, and -333 because they do not specify the office that Lodge was seeking. At an evidentiary hearing below, however, Lodge and several of his petition circulators testified that when they circulated petitions they told signers that Lodge was running for superior court judge in Division Five. The circulators also testified that they offered cards to signers specifying the division number. Other testimony indicated that some petition signers, after looking at Lodge's petition, inquired as to the office for which he was running.

¶5 The superior court found "insufficient evidence . . . to establish whether or not petition signers were . . . actually confused or misled" by the petitions. The court concluded that "electors signing Mr. Lodge's petitions would not know by reading the petition what office" and division within the superior court he was seeking. After ruling that none of Lodge's petitions substantially complied with the applicable statutes, the court entered judgment for Kennedy and ordered

- 3 -

that Lodge's name not be placed on the 2012 primary or general election ballots.

¶6	Lodge timely appealed. We have jurisdiction pursuant to Rule 8.1 of the Arizona Rules of Civil Appellate Procedure, Article 6, Section 5(3) of the Arizona Constitution, and A.R.S. § 16-351(A) (Supp. 2011), which provides for a direct appeal to this Court.

## II. DISCUSSION

¶7	We review de novo whether a petition form substantially complies with statutory requirements. *Moreno v. Jones*, 213 Ariz. 94, 101-02 ¶ 40, 139 P.3d 612, 619-20 (2006). In making this determination, this Court "has focused on whether the omission of information could confuse or mislead electors signing the petition." *Id.* ¶ 42 (citation omitted); *Bee v. Day*, 218 Ariz. 505, 508 ¶ 13, 189 P.3d 1078, 1081 (2008); *see also* A.R.S. § 16-333 ("Any petition filed by a candidate for [superior] court which does not comply with the provisions of this chapter shall have no force or effect."). Thus, we must determine whether the omission of the office or the division number from Lodge's petitions could have confused or misled the electors who signed them.

### A. Omission of the Office Designation "Judge"

¶8	The omission of the word "Judge" from Lodge's petitions does not render the petitions fatally defective. Our opinion in

*Moreno* is instructive. There, an elector challenged the validity of a state senate candidate's petition that omitted the specific date of the primary election and included only the year of the election. *Moreno*, 213 Ariz. at 101-02 ¶¶ 40-42, 139 P.3d at 619-20. We concluded that the omitted information could not have confused or misled electors because there is only one primary election for state legislative office in any election year. *Id.* at 102 ¶ 44, 139 P.3d at 620. We therefore held that electors would "automatically know for which primary election they were signing." *Id.* ¶ 45 (internal quotes omitted); *see also Bee*, 218 Ariz. at 508 ¶¶ 13-14, 189 P.3d at 1081 (holding that the omission of the expiration date of the candidate's unexpired vacant term was not fatal because only one seat for that office was open in that election).

¶9 Likewise, only one Coconino County Superior Court office is up for election this year: superior court judge. Therefore, electors would automatically know for which office they were signing. The omission of "Judge" from Lodge's petitions could not have confused or misled signers and, thus, does not render the petitions fatally defective.

**B. Omission of the Division Number**

¶10 We turn to the omission of the division number from Lodge's petitions. Arizona law provides that if "two or more judges of the superior court are to be . . . elected for the

- 5 -

same term, it shall be deemed that there are as many separate offices to be filled as there are judges of the superior court to be elected." A.R.S. § 16-331(A). Further, each office must be "designated by the distinguishing number of the division of the court," *id.*, and that designation "shall be used on all nominating petitions," *id.* § 16-331(B); *see also* Ariz. Const. art. 6, § 12(A) (requiring ballots for superior court judicial candidates to include "the division and title of the office"). Thus, each superior court judgeship is a separate office identifiable by the particular division to which the candidate seeks election. And, as Lodge acknowledges, a "petition signer needs to know for which division he is nominating someone because he can only nominate one candidate for each division." *See* A.R.S. § 16-314(C).

¶11    In *Marsh v. Haws*, the plaintiff challenged the validity of three candidates' petitions to run for the office of Justice of the Peace for the South Phoenix Precinct. 111 Ariz. 139, 140, 526 P.2d 161, 162 (1974) (per curiam). Two of the candidates' petitions listed the office as "Justice of the Peace," without specifying the precinct. *Id.* At the time, Maricopa County had seventeen Justice of the Peace precincts, fourteen of which were up for election that year. *Id.* We held that the petitions for these two candidates did not substantially comply with statutory requirements because

electors could not determine from the face of the petitions for which precinct the candidates were running. *Id.*

¶12 Like the petitions in *Marsh*, Lodge's petitions did not include any information that would inform the petition signers of the division for which he was running. Because of that material omission, a signer would not "automatically know that he was nominating a candidate for the office" of Division Five of the Coconino County Superior Court. *Moreno*, 213 Ariz. at 102 ¶ 43, 139 P.3d at 620 (quoting *Marsh*, 111 Ariz. at 140, 526 P.2d at 162). Lodge's nominating petitions therefore do not substantially comply with statutory requirements. *See* A.R.S. § 16-331(A); *see also Marsh*, 111 Ariz. at 140, 526 P.2d at 162.

¶13 Lodge argues that his petitions substantially complied because little evidence showed that electors were actually confused or misled by the omission. He asserts that electors were aware of the division for which he was running because he and some petition circulators handed out palm cards, wore campaign stickers, posted campaign signs, and recited a speech — all of which identified Lodge as a candidate for superior court judge in Division Five. We conclude, however, that this extrinsic information cannot be used to cure the defect in his petitions.

¶14 To support his claim that we should consider evidence extrinsic to the petitions to show voters' lack of confusion,

Lodge relies on *Clifton v. Decillis*, 187 Ariz. 112, 116, 927 P.2d 772, 776 (1996), in which we held that an independent candidate's petitions substantially complied with statutory requirements despite leaving blank the space reserved for party designation. Although we noted in *Clifton* that the candidate told each elector that she was running as an independent, that extrinsic information did not factor into our substantial compliance analysis. *Id.* at 113, 927 P.2d at 773. Rather, we concluded that the party designation was not essential to an independent candidacy because independent candidates do not run in primary elections and, by definition, have no party designation. *Id.* at 115-16, 927 P.2d at 775-76. Because party designation was not essential, its omission was not fatal to the petitions. *Clifton* does not support Lodge's use of and reliance on extrinsic evidence in the context presented here.

¶15     The relevant inquiry thus is whether the nominating petition itself substantially complies with statutory requirements. *See Bee*, 218 Ariz. at 508 ¶ 12, 189 P.3d at 1081 ("In reviewing non-compliance with any component of the form, the relevant inquiry is whether *the form* as a whole substantially complies with the statutory requirements." (emphasis added)). Allowing candidates to compensate for petition defects with extrinsic evidence that such defects did not result in voter confusion would eviscerate the statutory

requirement that all essential information be made available to the elector on the petition form. *See* A.R.S. §§ 16-314(C), -331, -333. Furthermore, it would encourage an inquiry into whether each signer was actually confused or misled, a determination that could be made here only by ascertaining whether at least 525 qualified petition signers understood that Lodge was running for judge of Division Five when each signed Lodge's petition. This is precisely the type of inquiry that the statutory petition requirements are designed to avoid.

¶16 The applicable statutes require superior court judicial nominating petitions to specifically designate the division number of the judicial office sought. Under our cases, the relevant inquiry is whether an elector would know just by reading his petitions for which division Lodge was running. The petitions here fail to adequately inform electors that Lodge sought election to Division Five because they do not specify any division and more than one division is up for election in this cycle. Accordingly, the petitions failed to substantially comply with statutory requirements.

## III. CONCLUSION

¶**17**     For the foregoing reasons, we affirm the judgment of the superior court.

_____
Rebecca White Berch, Chief Justice


CONCURRING:


_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice